In re AIR CRASH DISASTER AT DETROIT METROPOLITAN AIRPORT ON AUGUST 16, 1987.

**MDL No. 742.**

United States District Court, E.D. Michigan, S.D.

Oct. 16, 1989.

See also 130 F.R.D. 647.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear and Thomas Meehan, Washington, D.C., and Richard Schaden, Birmingham, Mich., for plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., and Donald E. Shely, Dykema Gossett, Detroit, Mich., for defendant McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On August 18, 1989, this Court notified the parties that it intended to appoint the

Plaintiffs' Steering Committee (PSC) to serve as the lead counsel for the purpose of prosecuting the joint liability trial which began on October 2, 1989. *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, 737 F.Supp. 391, 396 (E.D.Mich. Aug. 18, 1989). The Court further noted that any party who opposed the designation of the PSC to serve as the lead counsel during the liability trial should file objections on or before August 28, 1989. *Id.*

The only objection to the proposed lead counsel designation was submitted by the Plaintiff in *Cichan v. Northwest Airlines, Inc.*, 89–CV–71684–DT.[1] In this opposition pleading, which was filed on August 29, 1989, she essentially maintains that (1) this Court has no authority to appoint the PSC to serve as the lead counsel in a joint liability trial,[2] and (2) such a designation would abridge her right to representation by counsel of her choice.[3]

### I

In *In re Bendectin Litigation*, 857 F.2d 290, 297 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 U.S. 788, 102 L.Ed.2d 779 (1989), the Sixth Circuit Court of Appeals upheld the lower court's decision to appoint a "lead counsel committee" that would serve as counsel for the plaintiffs in a multidistrict litigation case. Despite the protestations of some plaintiffs that such an appointment would "den[y] them the right freely to choose counsel," the *Bendectin* Court concluded that "[i]n complex cases, it is well established that the district judge may create a Plaintiffs' Lead Counsel Committee." *Id.* at 297 (citations omitted).[4]

In addition, the Fifth Circuit Court of Appeals also determined that the district court has the authority to appoint lead counsel to conduct pretrial discovery and to litigate liability issues which are common to all plaintiffs. In *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir.1977), the district court appointed lead counsel to conduct all pretrial matters and to prosecute the issues of liability on behalf of all plaintiffs. *Id.* at 1009. In recognizing the authority of the trial court to make such an appointment, the *Florida Everglades* Court noted:

> The need for a court to exercise its inherent managerial powers as expressed in rule 42(a) may take precedence over desires of counsel. . . . .
>
> It is not open to serious question that a federal court in a complex, consolidated case may designate one attorney or a set of attorneys to handle pre-trial activity

---

1. The Defendant, McDonnell Douglas Corporation (MDC), filed papers in opposition to the Plaintiff's position on September 15, 1989. Northwest Airlines, Inc. (Northwest), also a Defendant in the instant dispute, filed pleadings in opposition to the Plaintiff's contentions on September 15 and 18, 1989.

2. The Plaintiff also maintains that this Court has no authority to transfer and consolidate all actions in this multi-district litigation for a joint liability trial on common issues of liability. Plaintiff's Motion to Sever and Objections to the PSC Acting as Sole Counsel at the Proposed Joint Liability Trial at 6 (Aug. 29, 1989). In addition, she argues that, even if this Court is empowered with such authority, it should not do so in this case. *Id.* at 9–11.

   This Court rejects the Plaintiff's position on this issue for the reasons that were outlined in its Order of August 18, 1989.

   Finally, the Plaintiff contends that her claim should be severed from the joint liability proceedings. This Court takes no position on this issue today.

3. The Plaintiff's attorney makes the rather extraordinary statement that "Petitioner and his clients are being denied a fundamental right to prepare and participate in preparation of their civil case." Petition at 3. This is absolutely incorrect. The absence of the Plaintiff's attorney from the Steering Committee does not preclude him from fully representing, and acting in the best interest of his clients as long as his activities are not inconsistent with the language, terms and spirit of the Order of this Court. *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, MDL No. 742 at 1 n. 3 (E.D.Mich. May 18, 1988).

4. In support of its decision that the district court had the authority to appoint the Plaintiffs' Lead Counsel Committee, the Sixth Circuit Court of Appeals noted that no plaintiff objected at the time of the appointment. However, the clear import of the *Bendectin* opinion suggests that the noted absence of opposition to the appointment was not critical to a finding that the district court has the authority to appoint lead counsel.

on aspects of the case where the interests of all co-parties coincide. *MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958), is perhaps the leading case on the court's power to appoint and rely on lead counsel. Chief Judge Kaufman's opinion contains these pertinent passages on the issue of judicial power:

The purpose of consolidation is to permit a trial convenience and economy in administration. Toward this end Rule 42(a) in addition to providing for joint trials in actions involving common questions of law and fact specifically confers the authority to "make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Certainly, overlapping duplication in motion practices and pre-trial procedures occasioned by competing counsel representing different plaintiffs in separate [ ...] actions constitute the waste and inefficiency sought to be avoided by the lucid direction contained in the rule.

An order consolidating ... actions during the pre-trial stages, together with the appointment of a general counsel may in many instances prove the only effective means of channeling the efforts of counsel along constructive lines and its implementation must be considered within the clear contemplation of the rule.

[ .... ]

The advantages of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

. . . .

A common air disaster is a classic case for complex litigation techniques.

*Id.* at 1014–15 (footnote and citations omitted).[5]

Despite the Plaintiff's objections, this Court concludes that it does have the authority to appoint and designate the PSC to serve as lead counsel for the Plaintiffs for the purpose of prosecuting the common issues in a joint liability trial. *See also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir.1977); *In re Richardson–Merrell, Inc. Bendectin Products*, 624 F.Supp. 1212 (S.D. Ohio 1985), *aff'd in part*, 857 F.2d 290 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *In re Swine Flu Immunization Products Liability Litigation*, 89 F.R.D. 695, 699 n. 3 (D.D.C.1981).[6]

**5.** The Plaintiff maintains that the *MacAlister* decision, which was relied upon in the *Florida* court, does not support the proposition that the district court may appoint lead counsel to try a case on behalf of all plaintiffs. In fact, the following passage from *MacAlister* by the Plaintiff reads as follows:

The function of general counsel is merely to supervise and coordinate the conduct of plaintiffs' case. The separate actions are not merged under the direction of one court appointed master of litigation—each counsel is still free to present his own case, to examine witnesses and to open and close before the jury, if there be one.

*MacAlister*, 263 F.2d at 68. However, the Plaintiff fails to mention that the Second Circuit Court of Appeals subsequently clarified *MacAlister* by noting that its decision was not intended to preclude a trial court from designating lead counsel to conduct pretrial matters and to prosecute the case on behalf of all plaintiffs in complex cases. In *Farber v. Riker–Maxson Corporation*, 442 F.2d 457, 459 (2d Cir.1971), the Court noted:

[W]e did not intend to intimate in *MacAlister* that each individual plaintiff and lawyer must be permitted to do what he pleases in litigation as complex as this, and can behave in total disregard of the interest of other litigants and of the class, nor that the district judge lacked the power to direct otherwise.

Therefore, in light of *Farber*, it is clear that the Second Circuit Court of Appeals also endorses the lead counsel concept.

**6.** This Court further reasons that the source of authority which supports this appointment may emanate from (1) the inherent power of a federal district court to " 'control the disposition of the causes on its docket with economy of time and effort for itself, counsel and for litigants,' " *In re FTC Line of Business Report Litigation*, 626 F.2d 1022, 1027 n. 29 (D.C.Cir.1980) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)), or (2) the terms of Rule 42(a) of the Federal Rules of Civil Procedure, *see Florida*, 549 F.2d at 1014–15.

This Court also notes that, contrary to the Plaintiff's position, it has not precluded non-PSC members from participating in the joint liability trial. Certainly, the non-PSC members may offer assistance and suggestions to lead counsel during the course of the proceedings. However, the conduct of this trial would become chaotic and totally unmanageable if the Court permitted the counsel for each Plaintiff to present his position or theory of the case to the jury.

Accordingly, this Court rejects the Plaintiff's objections and appoints the PSC to serve as lead counsel for the purposes of the joint liability trial, *nunc pro tunc* to October 2, 1989.

IT IS SO ORDERED.